## Smith *versus* Simmons.

1. The authorities of a borough may, in cases justified by necessity or custom, license private individuals to occupy public highways, to a reasonable extent and for a reasonable time, for private purposes, in a manner which would otherwise constitute a nuisance.

2. A ditch dug in a street of a borough, for the purpose of laying water-pipe from a spring to a private dwelling-house, in pursuance of a municipal license, is not a public nuisance per se, so as to make all parties concerned in sinking it liable for any damages that may result from it.

3. Where one who contracts to perform a lawful service for another is independent of his employer in all that pertains to the execution of the work, and is subordinate only in effecting a result in accordance with the employer's design, he is an "independent contractor;" and in such case the contractor alone, and not the employer, is liable for damages caused by the contractor's negligence in the execution of the work.

4. A., having obtained a license from the borough authorities to lay water-pipe in a street, contracted with B., for $25, to dig a ditch in a borough street and lay the pipe, A. to furnish the pipe and boxing, but to have no further connection with the work. In an action against A. to recover damages for an injury caused by B.'s negligence in leaving the ditch unprotected: *Held*, that B. was an independent contractor, and that A. was not liable for B.'s negligence in performing his contract.

March 14th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas of *Susquehanna county:* Of January Term 1883, No. 262.

Case, by O. H. Simmons and Sarah Ann Simmons, his wife, to the use of the latter, against E. N. Smith, for injuries to Mrs. Simmons, occasioned by negligence of a contractor employed by defendant. Plea, not guilty.

At the trial, before Morrow, J., the following facts appeared: In 1877, defendant obtained a license from the Town Council of the borough of Susquehanna to dig a ditch and lay a pipe for a short distance along the street running in front of his house for the purpose of conveying water from a spring to his premises. He agreed with one Florence to dig the ditch

[Smith v. Simmons.]

and lay the pipe for the sum of $25, defendant to furnish boxing, pipe, and a man to solder the pipe. The ditch was dug and not properly protected, and on the night of August 15th 1877, the plaintiff, Mrs. Simmons, in attempting to cross the street, stepped into it and injured her knee.

The defendant presented, inter alia, the following points:

2. "That if Jonas Florence contracted with defendant to dig this trench, lay the pipes, fill the trench, and do all the work connected with the job (except soldering the pipe by a tinsmith, who was paid by defendant), for the gross sum of $25, the defendant not interfering with, or giving any directions as to the manner in which the work was to be done, then Florence was a contractor exercising an independent employment, and defendant is not liable for any negligence of Florence in not providing and putting up guards to the trench."

Answer. "Under the evidence in this case, the court refuses to affirm this point." (Third assignment of error.)

18. "There is no question arising from the evidence or under the law in this case, as to whether this ditch was a trespass upon private property, being in a public street and authorized by the authorities having control and supervision of the streets. The purpose being proper and lawful, it was not in itself a nuisance, and there is no evidence in the cause to show that any right of private property was interfered with."

Answer. "Denied." (Eleventh assignment of error.)

In the general charge the court said: "I do not think, therefore, that the borough council of Susquehanna had the power to give authority to Dr. Smith to do the work he did on this street; and when he did the work there by himself or Florence it was the same as if he was doing it without authority from the council, and the result of that would be that all persons engaged in it, if accident or damage happened to any body through the digging of the trench, would be liable for whatever damages were sustained. Dr. Smith gave the contract to Mr. Florence for $25 to dig the ditch. The doctor furnished the pipe, the lumber for the box in which the pipe was to be put, the nails, and furnished the man to do the soldering. These facts are not disputed, they are proven on the part of the plaintiff, and Dr. Smith testified to the same state of facts; therefore, if you should find that the ditch was dug and was left unguarded so that it was unsafe to persons passing along the streets, then it was a public nuisance, and any person passing along the street and exercising ordinary care who received injuries, would be entitled to recover from all persons concerned in and about the condition of that water-way." (First assignment of error.)

Verdict for plaintiff for $1,200, and judgment thereon.

[Smith *v.* Simmons.]

Defendant took this writ of error, assigning for error, inter alia, the answer to the above points, and the portion of the charge quoted.

*Blakeslee* (*Davies* and *W. M. Post* with him), for plaintiff in error.—The borough council had power to license the temporary use of the street for a necessary or reasonable private purpose. such as the laying of a pipe for conveying water for domestic use, and the act of the defendant and his contractor, in pursuance of such license, was not a nuisance per se. Such act would not have been a nuisance at common law : Commonwealth *v.* Passmore, 1 S. & R. 217 ; Philadelphia *v.* Collins, 18 P. F. S. 106. The contractor was, in this case, exercising an independent employment, and the defendant is not liable for damages caused by the negligence of the contractor or his servants in doing the work: Blake *v.* Ferris, 5 N. Y. 48 ; cited and approved in Painter *v.* The Mayor, 10 Wr. 221. The case of Chicago *v.* Robbins, relied on by the other side in the court below, is criticised in Painter *v.* The Mayor, and the doctrine on which it is founded said to be exploded. See also, 1 Thompson on Negligence 355 ; Homan *v.* Stanley, 16 P. F. S. 464.

*McCollum* (*Watson* with him), for the defendant in error. —A borough council has no authority under the law to grant permission to a private citizen for his own private benefit to commit a nuisance in a public street. It was not error in the court to term a dangerous opening in a frequented street a public nuisance : Beatty *v.* Gilmore, 4 Harris 463 ; Homan *v.* Stanley, 16 Smith 464.

Mr. Justice GORDON delivered the opinion of the court, April 16th 1883.

This case presents two main questions for our consideration and resolution, and these being determined, all others raised by the assignments may be passed as of minor consequence. Was the digging of the ditch in the public street of the borough of Susquehanna a nuisance per se? If not, if it was such a necessary work as was properly licensable by the borough council, then, as the second question, was the defendant chargeable with the negligence of his contractor who had charge of the work ? It is certainly true, that if the premise assumed by the court below be correct, the conclusion adopted by it follows as a matter of course. If the ditch dug for and at the instance of Dr. Smith was a public nuisance, then he and all engaged in sinking it were responsible for all damages resulting from it, and the doctrine of respondeat superior is out of the case. But we do not think it was per se a nuisance ; such a work that the

borough council had no power to permit. This ditch was dug for the purpose of laying a pipe for the conveyance of water from a spring to one of the defendant's houses on Willow street. Water is one of those prime necessaries without which people cannot live, and the public streets of towns and cities have, from time immemorial, been used as a means for its production or conveyance. Formerly it was very common for the citizens of the various municipalities to sink wells for this purpose on the public thoroughfares, and this, as was said by Chief Justice GIBSON, in Barter *v.* Commonwealth, 3 P. & W. 253, was by sufferance, and in subjection to the corporate franchise. In these days, when water-works are common to all the larger towns, pipes are laid in the streets from which the water supply is drawn both for public and private uses, and although the right thus to lay pipes is usually accorded to a corporation, it by no means follows that it might not be done by private persons acting under municipal authority. Necessity, as was held in the case of the Commonwealth *v.* Passmore, 1 S. & R. 217, justifies many actions which would otherwise be nuisances. No one has the right to throw wood or stones in the street at his pleasure, nevertheless, as building is necessary, building materials may be laid therein for a reasonable time, and in a convenient manner. So may a merchant occupy the street with his goods ; in like manner may the common highways be temporarily opened for the purpose of building vaults under them, or, under like regulations, private drains may be connected with the common sewers or gutters, or houses and other buildings with the streets, by-alleys, door-steps, and the like. By such things as these, and many others, which are justified by necessity or custom, may public highways be occupied temporarily or permanently, and it would be strange, indeed, if, in the face of all this array of precedents, a private citizen, acting under municipal license, could not, without committing a public nuisance, lay a water-pipe along a street to his house. Such strictness as this would, in some of our county villages, deprive the inhabitants of their water supply altogether, and would, in many other instances, seriously interfere with the business and comfort of our people.

From considerations of this kind we are compelled to dissent from the ruling of the court below on this question of nuisance, and to hold, on the contrary, that the digging of the trench, complained of in this case, under the license of the borough council, was not such an act as of itself rendered the parties engaged in it guilty of a public wrong.

Having arrived at this conclusion, the question that next presents itself is that involving the responsibility of the defendant. If, however, the testimony of Jonas Florence, the con-

[Smith *v.* Simmons.]

tractor, is to be believed, Dr. Smith was not his responsible superior. Florence undertook the whole job for the compensation of $25, and the defendant had nothing to do except furnish the pipe and the box in which it was to be enclosed. With Florence, in the execution of this contract, he could no more interfere than he could about a job in which he had no interest. He might advise, but the contractor could receive or reject that advice as he saw fit; he might put a fence around the ditch whilst in process of construction, and Florence might treat it as an obstruction and remove it. In other words, Dr. Smith could not control the execution of the contract. He was entitled to a finished job, but it was not his business to see to, or regulate, the manner of its doing. The case is evidently governed by Harrison *v.* Collins, 5 Nor. 153, wherein it is said, by Mr. Justice MERCUR: " If one renders service, in the course of an occupation, representing the will of the employer only as to the result of the work, and not as to the means by which it is accomplished, it is an independent employment." But certainly, in the case under consideration, Florence was the subordinate of the defendant in nothing but the design, whilst in everything which pertained to the execution of the work he was the chief and only director and executor, and it hence follows that for his negligence the court ought not to have held the defendant responsible.

We therefore think, without particularizing as to the assignments of error, the court should have instructed the jury, that if they believed the uncontradicted evidence on part of the defendant, as to the character of his contract with Florence, the plaintiffs were not entitled to their verdict.

The judgment of the court below is reversed, and a new venire awarded.

TRUNKEY, J., dissented.