## PARKER *v.* BOYLE, RECEIVER, ET AL.

[No. 21,806.    Filed November 26, 1912.]

1. APPEAL.—*Assignment of Errors.—Waiver.—Briefs.*—A consideration of errors assigned on rulings of the trial court on demurrers to pleadings is waived by appellant's failure to present them in his brief.    p. 561.

2. APPEAL.—*Presenting Question for Review.—Sufficiency of the Evidence.—Briefs.—Defect Cured by Appellee's Brief.*—The court will not refuse to consider the sufficiency of the evidence to sustain the trial court's finding, although appellant has not complied with clause five of Rule 22 of the Supreme Court, which provides that where the sufficiency of the evidence is questioned appellant's brief shall contain a condensed recital of the evidence in narrative form, where appellant's failure is supplied by a statement of the evidence in appellee's brief.    p. 562.

3. APPEAL.—*Review.—Findings.—Evidence.—Sufficiency.*—In an action against the receiver of a gas plant, where the defendant filed a cross-complaint for an accounting for secret profits alleged to have been retained by plaintiff as promoter of the company, evidence showing that plaintiff represented to his associates that the plant could be purchased for $60,000, that they furnished all but a nominal amount of the purchase money believing that plaintiff was purchasing the plant for them all, that plaintiff purchased the plant for $40,000 and procured the deed to be executed to himself, and then organized a new company, causing the records to show a capitalization of $60,000 and the authorization of a $30,000 bond issue, that he sold stock to various parties, representing the cost of the plant at $60,000, and afterwards issued stock and bonds to himself and to his creditor in a total sum of $30,000, for which the corporation received nothing, was sufficient to support the finding and judgment for the receiver on his cross-complaint.    p. 562.

4. TRUSTS.—*Resulting Trusts.—Purchase by Promoter of Corporation.*—Where a promoter of a corporation was furnished by his associates with all but a nominal amount of the money for the purchase of property for them all, to be thereafter transferred to the proposed corporation, he, in making the purchase, acted in a fiduciary capacity and will be considered in equity as a trustee holding the acquired title for the benefit of those who furnished the money.    p. 566.

5. CORPORATIONS.—*Promoters.—Relation.—Duty in Transactions With Corporation.*—The promoter of a corporation holding a fiduciary relation thereto, is bound to act in the utmost good faith,

and is not permitted to obtain any secret advantage or profit over the stockholders, and, though he may sell property to the company which he is promoting, he can do so lawfully only when he provides an independent board of directors and makes a full disclosure to the corporation through them, or makes such disclosure to each original subscriber for stock, or when he shall have procured a ratification of the sale, after disclosing its circumstances, by a vote of the stockholders of the completely established corporation. p. 567.

From Daviess Circuit Court, *James W. Ogdon,* Judge.

Action by Bascom Parker against Lawrence P. Boyle, as receiver of The City Gas Company of Washington, Indiana, and others. From a judgment for the receiver, the plaintiff appeals. *Affirmed.*

*Hastings, Allen & Hastings,* for appellant.

*W. R. Gardiner, C. K. Tharp, C. G. Gardner,* and *C. W. Watkins,* for appellees.

MORRIS, J.—Appellant filed a claim against appellee Boyle, as receiver of The City Gas Company of Washington, Indiana, for money advanced for the benefit of the company, and for personal services rendered as manager thereof for a period of six years. The receiver filed an answer to the claim, and also a cross-complaint for an accounting, alleging that appellant was indebted to the company in a large sum for secret profits unlawfully retained by him as a promoter of the company, and also alleging that claimant was justly indebted to the company on other accounts. After issues were formed there was a trial by court, and finding and judgment for appellee receiver, in the sum of $21,260.65, from which this appeal is prosecuted. Appellant's

1. motion for a new trial was overruled. Errors are here assigned on the court's rulings on certain demurrers to pleadings, but a consideration of these has been waived by a failure to present them in appellant's brief.

It is claimed that the court's decision is not supported by

sufficient evidence and is contrary to law. But, at the threshold, we are met by appellees' contention that

2. the court cannot consider the sufficiency of the evidence, because appellant has failed to comply with clause five of Rule 22 of this court, which requires that in case the insufficiency of the evidence, in fact or law, to sustain the verdict or decision, is assigned, appellant's brief shall contain a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely. Appellees, however, while expressly disavowing any intention to waive the point, have, in their brief, so supplemented that of appellant, by setting out a condensed recital of the evidence, that the court is enabled intelligently to consider it without recourse to the bill of exceptions.

Appellant has signally failed to comply with clause five of Rule 22, in preparing his brief. Instead of a condensed recital, in narrative form, of the testimony of the various witnesses, counsel have stated the facts, in a general way, which they conclude are established by all the evidence, and have followed this with many pages of excerpts from the bill of exceptions. There has been no attempt whatever to give a condensed recital, in narrative form, of the evidence adduced at the hearing.

Inasmuch, however, as appellant's failure to prepare his brief in accordance with the rule has been supplied in that of appellee, we perceive no good reason why the court should refuse to consider the sufficiency of the evidence, in law, or in fact, to sustain the finding. *Michael v. State* (1912), 178 Ind. 676, 99 N. E. 788, and cases cited.

There is a sharp conflict in the evidence relating to the material facts in issue. Appellant testified that in December, 1903, he purchased on his own account the gas

3. plant and franchises from the Washington Gas Company, with an agreement with the latter that it should be paid for at a future time. The purchase price was $40,000. After making the purchase, he procured others to

invest in stock and bonds of a proposed new corporation, to be named The City Gas Company, and to be organized to operate the plant on a capitalization of $60,000, the investors to receive $1 in stock and fifty cents in bonds for each dollar invested; that bonds were to be issued for $30,000; that the new corporation was organized on such plan; that each investor received stock and bonds accordingly; that $10,000 in stock, and $5,000 in bonds were issued to appellant, and the same amounts were issued to Julius Dick, for which the corporation received nothing, but which, on appellant's theory, belonged to him as $20,000 in legitimate profit in the purchase and sale of the plant; that Julius Dick was a creditor of appellant and the consideration of the issue to Dick, of the stock and bonds, was the settlement of appellant's account due Dick; that appellant did not tell any of the investors, with the possible exception of Julius Dick, that the plant cost only $40,000, but did tell them it was worth $60,000.

The principal ground of contention is the issue to appellant and his creditor, at his direction, of the stock and bonds for which the corporation received no equivalent.

It is appellant's theory that the corporators of the new company had the right to fix its capitalization, and it was competent for them to estimate the value of the plant purchased, and the court cannot say that because they estimated the plant too high appellant is legally bound to pay for $20,000 worth of stock issued to him, and yet take a price for the property which he never agreed to take. *Coffin* v. *Ransdell* (1887), 110 Ind. 417, 11 N. E. 20.

There was evidence given which sustains a finding of the following facts: About thirty years ago, appellant, Enos T. Taylor, Julius Dick and Jacob Dick were all residents of Huntington, Indiana. Taylor and the Dicks were wealthy, and engaged in large business affairs. The Dicks became the owners of an artificial gas plant in Huntington, and had appellant employed in various capacities therein until the

discovery of natural gas in that country, when he moved to Niles, Michigan, where he has since resided. While employed in the Huntington plant, appellant acquired a technical knowledge and experience in the manufacture and distribution of gas. He had the confidence of the Dicks and, through them, of Taylor, on all matters involving a knowledge of artificial gas plants. During the ensuing years, when appellant discovered on the market an artificial gas plant that could be bought for a low price, he went to these three men, and interested them in the purchase of such plant. In this way the four parties became the owners of a controlling interest in gas plants at Warsaw, Indiana; Niles, Holland and Manistee, Michigan; and LeMars, Iowa; Taylor and the Dicks furnishing practically all the money for the purchases. On December 28, 1903, appellant secured, orally, an option for the purchase of the Washington plant for $40,000, to be paid for as follows: $28,000 cash, bonds of a new company to be organized for operating the plant in the sum of $10,000, and the cancelation of existing bonds of the Washington Gas Company in the sum of $2,000.

Appellant was interested in the Holland, Michigan, plant in 1903, and was there during a reconstruction of the plant, and became acquainted with George E. Kollen, a resident of that city. In December, 1903, appellant informed Kollen that he had an option for the purchase of the Washington, Indiana, plant for $60,000, and solicited him to become an investor in it, and Kollen agreed to purchase 120 shares of stock, par value $100 per share, and $6,000 in bonds, for $10,000. On January 19, 1904, Kollen advanced $7,500 to appellant, and later, previous to July, 1904, paid him the remaining $2,500, and received the stock and bonds.

On January 20, 1904, appellant went to Taylor and the Dicks and informed them that he had looked over the Washington plant, that it could be bought cheap, and fixed up and resold at a profit. He said it could be purchased for $60,000. Neither Taylor nor Jacob Dick made any investi-

gation of the plant, but relied wholly on the representations of appellant, and on that day Taylor gave appellant $16,000 and Jacob Dick gave him $4,000 for their respective shares of the purchase money, and for which, when a reorganization of the company should have been perfected, Taylor was to have 160 shares of stock and $8,000 worth of bonds, and Jacob Dick was to have forty shares of stock, and $2,000 in bonds. No note was executed by appellant either to Taylor or Jacob Dick for the money paid to appellant, but it was then understood by them that they were furnishing the same as their share of the money to purchase the plant, and that the plant was being purchased for the Dicks, Taylor and appellant. Of the $27,500 advanced by Kollen and Taylor and Jacob Dick, appellant, on January 22, 1904, took $25,000, and deposited it in a bank at Washington, and on the same day paid $10,000 on the purchase price of the plant, and the sum of $18,000—the remainder of the cash payment—was paid February 3, 1904, on which day the purchase was completed and a deed for the property was executed to appellant. This deed recited the actual consideration—$40,000—but it was not recorded until 1908. In the early part of the year 1904, appellant sold to various parties shares of stock in the new company, representing to them that the plant had cost $60,000. Immediately after the execution of the deed appellant organized a new company to operate the plant, and had articles of incorporation prepared, naming the directors and officers thereof, with himself as secretary-treasurer and general manager, and Julius Dick as president. He had the records to show meetings of stockholders and directors, when in fact no such meetings were held. One of these records showed the adoption of a resolution placing the capital stock at $60,000, and authorizing the issue of $30,000 worth of bonds, secured by a mortgage on the property. None of these records were signed by any one. In April, 1904, blank stock certificates and bonds were printed at appellant's order, and by him sent to

Julius Dick, president, then residing in Florida, for his signature thereto, and when returned, signed by Dick, $10,000 in stock and $5,000 in bonds were issued to appellant, and the same amount to Julius Dick, for which the corporation received nothing. Julius Dick paid appellant for his stock and bonds by the cancelation of obligations against him. On June 20, 1904, appellant executed a deed for the property to The City Gas Company. Appellant remained in the exclusive control and management of the property until 1908, when he was ousted. During this time, the other stockholders relied entirely on appellant, and made no investigation of the affairs of the company. During his incumbency, the company, under his exclusive control, borrowed $19,000, a great portion of which was deposited in bank to the individual credit of appellant. Soon after the stock was issued, appellant, without consulting any stockholder or director, levied an assessment of twenty per cent on the par value of the stock, and collected the same from all the stockholders except himself and Kollen. The latter refused to pay, because of lack of authority to make the levy, and thereupon appellant bought from Kollen 100 shares of his stock, and paid therefor $6,000. After appellant had managed the plant for four years, the company had become indebted for $28,000 on general claims, for which judgments were rendered, and later, appellee Boyle was appointed receiver of the corporation.

Appellant's contentions are predicated on the incorrect premise that he solely and exclusively acquired and owned the property of the Washington Gas Company by virtue of the purchase in February, 1904.

On the facts above stated, which are sufficiently supported by the evidence, appellant was furnished all but a nominal amount of the purchase money by his associates for the purpose of buying it for them all. In such case, in making the purchase he was acting in a fiduciary capacity, and will be considered in equity as a trustee hold-

ing the acquired title for the benefit of those who furnished the money with which to make the purchase. *National Bank, etc.,* v. *Seward* (1886), 106 Ind. 264, 6 N. E. 635. But even if appellant did become the exclusive owner of the plant, it does not follow that he became lawfully entitled to any secret profit accruing from the sale thereof to the new company.

The rule is well established, that the relation of a promoter to the corporation is a fiduciary one, and binds him to act in the utmost good faith, and prevents him 5. from obtaining any secret advantage over the stockholders, or making secret profits in a sale of property to the corporation. *Old Dominion Copper Mining, etc., Co.* v. *Bigelow* (1909), 203 Mass. 159, 89 N. E. 193; *Lomita Land, etc., Co.* v. *Robinson* (1908), 154 Cal. 36, 97 Pac. 10, 18 L. R. A. (N. S.) 1106 and note; *Jordan & Davis* v. *Annex Corporation* (1909), 109 Va. 625, 64 S. E. 1050, 17 Ann. Cas. 267 and note; *Hinkley* v. *Oil, etc., Co.* (1906), 132 Iowa 396, 107 N. W. 629, 119 Am. St. 564; *Cuba Colony Co.* v. *Kirby* (1907), 149 Mich. 453, 112 N. W. 1133; 10 Cyc. 274.

While a promoter, notwithstanding the fiduciary relation, may sell property to the company which he is promoting, he may do so lawfully only when he shall have provided an independent board of officers, in nowise under his control, and make a full disclosure to the corporation, through them; or when he shall have made a full disclosure of all material facts to each original subscriber for shares of stock in the corporation; or when he shall have procured a ratification of the sale, after disclosing its circumstances, by vote of the stockholders of the completely established corporation. *Old Dominion Copper Mining, etc., Co.* v. *Bigelow, supra.*

Not one of the above courses was pursued by appellant. Instead of disclosing all the facts to each subscriber, it appears that as to nearly all of them it was represented that the purchase price of the plant was $60,000, when, in fact, it was only $40,000.

The decision of the trial court is sufficiently supported by the evidence. Judgment affirmed.

NOTE.—Reported in 99 N. E. 986. See, also, under (1) 3 Cyc. 388; (2) 2 Cyc. 1013—New Ann.; (4) 39 Cyc. 148. As to promoters of corporations and their relation thereto, see 17 Am. St. 161; 85 Am. St. 385. For a discussion of the relation of a promoter to the corporation and its stockholders, see 4 Ann. Cas.. 669; 17 Ann. Cas. 269. The authorities on the duties and liabilities of promoters to a corporation and its members are reviewed in notes in 25 L. R. A. 90, and 18 L. R. A. (N. S.) 1106. And for the liability of corporations on contracts of promoters, see 26 L. R. A. 544.