(No. 12896.—Reversed and remanded.)

WILLIAM H. PERRY et al. Appellees, vs. ANTOINE ENGEL et al. Appellants.

*Opinion filed February 15, 1921—Rehearing denied April 6, 1921.*

1. PRINCIPAL AND AGENT—*principal is entitled to profits of real estate agent's transaction.* One who employs another as his agent to sell or exchange real estate is entitled to all the agent's skill, ability and industry in making the purchase or exchange on the best terms that can be had, and is entitled to the property, in case of an exchange, at the price the agent paid; and the agent cannot avail himself of any advantage his position may give him to speculate to the injury of his principal but all the profits and advantages gained in the transaction belong to the principal.

2. SAME—*an agency is a relation of trust regardless of the consideration.* The relation of principal and agent is one of trust and confidence, and where such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition, no matter how large or how small the commission paid may be or whether the agent is a mere volunteer at a nominal consideration.

3. SAME—*party selling farm to agent without knowledge that agent is defrauding his principal is protected.* One who sells his farm to an agent without knowledge that the agent is buying the farm to defraud his principal by conveying it to him at an advance will be protected in subsequent litigation between the agent and the principal and cannot be required to take back the farm and return the consideration. .

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

JACOB CANTLIN, for appellant Antoine Engel; GUSTAVE NELSON, for appellant Bertha Engel.

HARPER E. OSBORN, for appellees.

Per CURIAM: In June, 1917, appellees, William H. Perry and his wife, of Sterling, Illinois, owned a six-flat building, 957-959 East Sixty-second street, Chicago, and Perry employed Antoine Engel, of Tampico, Illinois, to either exchange the flat-building for farm property or to sell it. The flat-building was worth about $25,000 and was incumbered for $14,500. Perry had invested in it about $28,000 and told Engel he wanted to get that amount out of the property. Engel showed Perry several farms near Sterling but no exchange for them could be arranged. In July, 1917, they went to Carrollton, Missouri, at the suggestion of Engel, to inspect a farm owned by one Quisenberry but no deal was perfected with him. During the same month they inspected a farm of 200 acres in the county of Chariton, Missouri, described as the northwest quarter and the northeast quarter of the southwest quarter of section 17, township 55, range 19, owned by Richard W. Nance. Perry examined the soil, crops and buildings on the farm and was desirous of making a trade for it. Engel represented to him that Nance was sick in a hospital in the city of Chicago and was not expected to live long and for that reason was desirous of selling his farm in order to get ready cash to meet expenses of his illness. He told Perry that he had known Nance and his wife for some time and that they were old friends of his and that he would see them and try to arrange a deal. A few days afterwards he told Perry that he had seen the Nances and that they would make the exchange; that they would take his flat-building and deed him the farm subject to a $14,000 mortgage, upon his further paying $1000 in cash and giving his note for $1000. He also told Perry that the Nances were peculiar people and would not make this deal unless Engel's

name was on the mortgage; that they had confidence in him and did not know Perry and that they would only make the deal that way. The terms for the exchange were not quite satisfactory to Perry. Later Engel represented to Perry that he had had a hard time in making the deal but had finally got the Nances to agree to exchange the farm subject to a mortgage of $14,000, for $1000 cash, a note for $700, the flat-building to be taken by the Nances subject to a mortgage for $14,500, appellees to have the rents for that year of the farm and the Nances the rent of the flat-building, beginning August 1, 1917. Engel stated to Perry that the farm was worth $140 per acre and that he could sell it for him for $150 per acre. He further informed Perry that the arrangement was that the Nances were to make a deed to Engel's daughter, Bertha, and she was to make a deed for the Missouri farm to Perry, and would deliver the Chicago property to the Nances after Perry had delivered it to her and when they desired her to do so. This proposition was accepted by Perry, and a contract was drawn up between himself and Bertha Engel at the instance of Antoine Engel by an attorney, Phillip H. Ward, Engel having first had the Nances deed the land to his daughter. The exchange of deeds was afterwards made between Perry and Bertha Engel, and Perry paid $1000 cash to Ward, who forwarded the same to Nance as an advance payment, and then Perry delivered his note for $700 payable to Bertha Engel, as it was stated to him that that was the way the Nances desired it done. Perry then paid Engel $200 as commission for perfecting the deal.

While Engel was seeking to have made the exchange of real property, he learned from L. M. Stewart, a real estate agent in Missouri, that the Nance farm could be bought for $15,000,—$1000 cash and a mortgage for $14,000 due in ten years at five per cent interest,—and that Stewart had a contract with the Nances to sell the farm on those terms. Engel made a contract of purchase of the farm for him-

self with Stewart and the Nances upon the terms given him by Stewart before he made the final deal with Perry. As a matter of fact, Engel had never known the Nances before this transaction. He first met them at the Presbyterian Hospital, in Chicago, August 1, 1917, and introduced himself to the Nances as the man who was trying to buy their farm. He stated to them that he was in a hurry to get the transaction completed, as he might be able to exchange it for some Chicago property. He told them he was purchasing their Missouri farm but that it would have to be taken in his daughter's name because his wife was in poor health and could not execute deeds. He finally concluded the deal with them and had them deed the farm to his daughter for $15,000,—$1000 in cash and a trust deed or mortgage on the farm signed by Bertha securing a note for $14,000 and interest signed by her and her father. The Nances never knew that Perry had or was to have any connection with the deal for their farm, and Perry did not know that the Nances were not to get the flat-building and were not trading for it until about the middle of November, 1917. The record evidence further discloses that Bertha Engel never saw this farm in person before it was deeded to her, and that she was never out one dollar of money for the land to the Nances or to anyone for them. Her father, on account of a judgment existing against him, appears in former deals to have taken title to property in her name and in this instance she took title for him, and the Nance property was deeded to her in the manner aforesaid after her father had learned from Perry that he could make the deal with him for the flat-property. He deceitfully led Perry to believe that he was trading directly with the Nances and that they were, in fact, to become the owners of his flat-property, for the purpose of taking advantage of Perry while his agent and for the purpose of his own gain. Nance died September 12, 1917, leaving Aurelia P. Nance, his widow, and Helen P. Nance, his daughter and only heir.

On December 7, 1917, appellees filed a bill in the superior court of Cook county against Antoine Engel, Bertha Engel, Helen P. Nance, individually and as administratrix of the estate of Richard W. Nance, Aurelia P. Nance and ·Robert M. Shanklin, based upon the foregoing facts, and praying to have the deed to the Chicago property to Bertha Engel declared void and set aside and that she be ordered to re-convey the real estate to complainants; that Antoine Engel be ordered to re-pay to them the sum of $700 obtained from their note for that amount, together with the $200 paid him as commission for the deal; that Helen P. Nance and Aurelia P. Nance be ordered to deliver up and cancel the $14,000 note and mortgage and re-pay to complainants the $1000 upon re-conveyance by complainants to the Nances of the Missouri farm; that Bertha Engel and Antoine Engel be restrained from disposing of the Chicago property and from interfering with the rights of complainants in the same, and for such other and further relief in the premises as equity may require.

Answers were filed to the bill, and the cause was referred to the master in chancery to take proofs and make his findings thereon. The master took the proofs, made his findings and recommended a decree in favor of complainants. Objections filed to the master's findings were overruled and exceptions were taken. The court on final hearing dismissed the bill of complaint as to Helen P. Nance, individually and as administratrix, and as to Aurelia P. Nance; decreed that Antoine Engel re-pay to complainants the $200 paid him by them as commission for the exchange; ordered and decreed that the deed of conveyance made and executed by complainants to Bertha Engel conveying the Chicago property to her be declared null and void and the same set aside and vacated; that Bertha Engel deliver to complainants the note for $700 given to her by them as part consideration for the exchange, or if it was disposed of, pay the same upon maturity; restrained Bertha Engel

and Antoine Engel from further collecting the rent of the Chicago property and from in any way interfering with the right of possession of complainants, and required the Engels to pay the costs of the suit. The decree also directed that an accounting be taken of the rents and profits received by the Engels from the Chicago property and also of all moneys paid out at any time by them or their agent, Robert M. Shanklin, on account of any mortgage lien or incumbrance on the same, and directed the master to state an account in connection therewith upon a re-reference to him for that purpose after taking the proofs concerning the same and to make report thereof. Antoine Engel and Bertha Engel prayed and perfected their appeal to this court.

The rule is, that if a party employs another as his agent to sell his real estate or exchange it for other real estate, he is entitled to all the agent's skill, ability and industry in making the sale or exchange on the best terms that can be had, and is entitled to the property, in case of an exchange, at the price the agent paid for the same. An agent cannot take any advantage of his position to speculate to the injury of his principal, and all profits and advantages gained in the transaction of the agent belong to the principal. The relation of principal and agent is one of trust and confidence, and where such confidence is reposed and such relation exists it must be faithfully acted upon and preserved from any intermixture of imposition. The rule is the same no matter how large or how small the commission paid may be or whether the agent is a mere volunteer at a nominal consideration. (*Salsbury* v. *Ware,* 183 Ill. 505; *Jackson* v. *Pleasanton,* 101 Va. 282; 31 Cyc. 1532; 29 Corpus Juris, 536, 537.) Under the relation of the parties here, appellees had a right to all the benefits and advantages of the transaction with the Nances. While the deed from the Nances to their farm was made in the name of Bertha Engel, grantee, it was not intended by the Engels nor appellees that she stand in the relation of purchaser

of the property, but merely that she accept the conveyance in furtherance of the purchase by the complainant Perry and take title to the Missouri farm for him.and as his agent.

Appellants claim that Bertha Engel was a *bona fide* purchaser of the property from the Nances; that appellees contracted with her for the exchange of the property with full knowledge of the facts in the case. Every fact testified to by the witnesses that tended to show fraud and deceit on the part of Antoine Engel was denied absolutely by the individual testimony of appellants, and they were corroborated in some particulars by the testimony of a son of Antoine Engel and brother of Bertha. It is strenuously insisted that this decree ought to be reversed upon their testimony. It would serve no useful purpose to discuss this evidence. Every witness in the case except the Engels gave testimony positively contradictory of the Engels, and every circumstance or fact proven tends absolutely to show that the facts are as we have stated them. The witnesses for the appellees, including Aurelia P. Nance and Philip H. Ward, the attorney who drew the contract for the Engels, and L. M. Stewart, a witness for the Engels, corroborated the testimony of appellees by their testimony and by letters Stewart wrote to the Nances while he was negotiating the sale of the Missouri farm with Engel. Engel had the consideration in the deed from the Nances to Bertha Engel named as one dollar, and in her deed to appellees it was named as $28,000. These false statements in the deeds served their purpose of deception as to the real consideration or value of the property.

The result of the transaction is as though appellees had, without the intervention of the Engels, bought the Missouri farm from the Nances for $15,000 subject to a trust deed for $14,000 against the property, by payment of $1000 in cash. In other words, all that appellees have as the result of the purchase of the Missouri farm is the equity of $1000 in the same, for which they paid the sum of $1000,

and the fee in the farm subject to the trust deed for $14,000 and interest. They thus paid in full the purchase price of the Missouri farm, and their Chicago property should not be subjected to the payment for the farm. Therefore, and by reason of the fraud on the part of their agent, Engel, the superior court rightly decreed that their deed to Bertha Engel conveying the Chicago property should be canceled and set aside.

But it is objected that appellees should not be allowed to keep the Missouri farm, for the reason that Bertha Engel signed the notes and trust deed for $14,000, and not having received the $1000 paid by appellees there is no consideration for her liability on the notes in question. The inconvenience to her and her liability under a deficiency decree, if there should be such on foreclosure of the trust deed, arises through no fault of appellees but through the fraudulent transaction of Engel, of which she at least had notice. Her signing the notes and trust deed was therefore voluntary, and she is not entitled to a decree changing the relation of the parties to that transaction.

The decree is silent as to the rights of the parties concerning the Missouri farm. Whether or not appellees might have had a decree requiring the Engels to re-pay the $1000 and take the Missouri land does not arise in the present state of the record as there was no such prayer in the bill. The prayer of the bill was that the Nances return the $1000 and cancel the trust deed and accept a re-conveyance of the farm. The Nances were properly held to have dealt in good faith and not to be in any way at fault, and therefore the bill was properly dismissed as to them. Appellees may renounce entirely as to the Engels, or they may keep whatever benefit is to be had from the purchase of the Missouri farm. If they desire to take advantage of the purchase of the Missouri farm they must do so on the ground that it was purchased for them by their agent, Engel, and that Bertha Engel, who took the deed to the property and executed the

notes and trust deed for the $14,000, acted also as their agent in that transaction. Bertha Engel deeded the farm to appellees subject to the trust deed for $14,000. The deed does not, however, recite that appellees assume and agree to pay the $14,000. If appellees elect to keep the Missouri property they should in equity be decreed to assume and pay, when due, the notes for $14,000 and interest thereon. By reason of the fraud on the part of their agent, they may, if so advised, by proper amendment to their bill and by re-conveyance of the farm to the Engels, secure a decree requiring the Engels to pay to them the sum of $1000 cash paid for the farm and accept such re-conveyance.

The chancellor erred in decreeing the return of the $700 note to appellees by Bertha Engel, as it is evident from the bill and is shown by the evidence that the note has been by the Engels transferred to an innocent holder for value. The decree, therefore, should have ordered the repayment of the amount for which appellees are liable on said note, or the payment of the note, with interest, when due, by the Engels.

The chancellor did not err in decreeing that Antoine Engel re-pay to appellees the commission paid to him, nor in ordering an accounting and assessing the costs against Antoine and Bertha Engel. The injunction was likewise properly issued. In all respects, aside from the errors pointed out in this opinion, the decree is correct. That decree must be reversed and the cause remanded to the superior court for correction concerning the $700 note and for disposition of the rights of the parties concerning the Missouri farm.

The decree of the superior court is therefore reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed, appellants to pay three-fourths of the costs of the appeal and appellees to pay one-fourth thereof. *Reversed and remanded.*